Matthew T. Billeci (SBN 329014)
mbilleci@jonesday.com
JONES DAY
3161 Michelson Drive
Suite 800
Irvine, California 92612.4408
Telephone:  +1.949.851.3939
Facsimile:   +1.949.553.7539

J. Laurens Wilkes (*pro hac* forthcoming)
jlwilkes@jonesday.com
JONES DAY
717 Texas Avenue
Suite 3300
Houston, Texas 77002.2712
Telephone:  +1.832.239.3939
Facsimile:   +1.832.239.3600

Attorneys for Plaintiff
SiFi Networks Fullerton LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| SIFI NETWORKS FULLERTON, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY,<br><br>Defendant. | Civil Action No. 8:23-cv-1417<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff SiFi Networks Fullerton, LLC ("SiFi Networks Fullerton") files this Complaint seeking monetary and declaratory judgment relief against Defendant Berkshire Hathaway Specialty Insurance Company ("Berkshire Hathaway"), relating to Berkshire Hathaway's breaches of its obligations to SiFi Networks Fullerton as a surety under the performance and payment bond agreements attached here as

**Exhibits 1** and **2**.  In support, SiFi Networks Fullerton alleges on its own knowledge or upon information and belief as to other matters as follows:

## NATURE OF THE ACTION

1.      SiFi Networks Fullerton seeks monetary and declaratory judgment relief arising from Berkshire Hathaway's breaches of its obligations to SiFi Networks Fullerton as a surety under the performance and payment bond agreements.  SiFi Networks Fullerton has already suffered significant damages and continues to do so, and expects to incur additional significant harm likely well in excess of $17 million, as set forth below.

2.      In 2018, SiFi Networks Fullerton contracted with Corbel Communications Industries LLC ("Corbel") to provide certain engineering, procurement, and construction services in connection with the development of a citywide fiber-to-the-home ("FTTH") network in the City of Fullerton, California, through a process known as microtrenching (the "Project").

3.      Microtrenching generally involves digging a narrow trench along existing roadways in order to deploy cables to support fiber optic networks.  Corbel represented that it was one of the specific companies in the industry that specialize in microtrenching, and that it was capable of performing the applicable work.

4.      In connection with this Project, Berkshire Hathaway issued a performance bond and a payment bond on behalf of Corbel as principal, in favor of SiFi Networks Fullerton.  Through the bonds, Berkshire Hathaway guaranteed Corbel's performance and payment obligations.

5.      Unfortunately for SiFi Networks Fullerton, Corbel fell short of its representations and agreements.  Corbel's struggles began from the outset, taking six months to obtain its first permit from the City of Fullerton to begin construction.  Permitting was *solely* Corbel's responsibility under the parties' agreement.  Even once it began construction, Corbel struggled to properly complete its scope of work.  Defective work, poor productivity, and safety incidents plagued Corbel's

performance even as its continued permitting struggles led the Project to fall further behind schedule.

6.     Despite these deficiencies, SiFi Networks Fullerton worked with Corbel to try to get the Project back on track.  SiFi Networks Fullerton pushed Corbel to develop better quality control plans and improve its performance.  It also listened to proposals from Corbel in the summer of 2021 on how it would ensure completion of the work and finish the Fullerton Project o`n the same terms.  SiFi Networks Fullerton's good faith interest in listening to such proposals was in seeing Corbel complete the work it agreed to perform at the price it agreed to do so.

7.     That performance did not happen.  Regardless of SiFi Networks Fullerton's efforts, Corbel's operations did not improve, and it became non-responsive at the end of 2021 even as SiFi Networks Fullerton continued to alert Corbel of outstanding problems that needed to be fixed.

8.     Accordingly, pursuant to Section 3.1 of the performance bond that Corbel obtained in connection with the Project, bond owner SiFi Networks Fullerton notified Corbel's surety, Berkshire Hathaway, in December 2021 that it was considering declaring a Contractor Default.  **Ex. 1**, Performance Bond § 3.1.

9.     After a conference requested by Berkshire Hathaway and attended by SiFi Networks Fullerton led to no change, SiFi Networks Fullerton declared a Contractor Default pursuant to the performance bond's terms and terminated Corbel in February 2022.

10.     SiFi Networks Fullerton then cooperated in a months-long investigation by Berkshire Hathaway into its performance bond claims, including responding to multiple rounds of requests for information and cooperating with a consultant Berkshire Hathaway hired to examine Corbel's performance.  As part of that process, Berkshire Hathaway expressly waived its right to self-perform Corbel's remaining work and agreed to SiFi Networks Fullerton hiring two replacement contractors to finish what Corbel started.

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 8:23-cv-1417

11.    Despite these efforts, Berkshire Hathaway denied liability, which was done *seven months* after SiFi Networks Fullerton made its claim on the bond and after approving the replacement contractors.  Tellingly, Berkshire Hathaway made no attempt to defend Corbel's performance in denying liability.  Instead, Berkshire Hathaway alleged a purported scheme involving one of Corbel's former executives forming a new company that was to acquire Corbel's assets with the help of a private equity firm.

12.    However, Berkshire Hathaway has not pointed to any involvement in this scheme by SiFi Networks Fullerton—nor would it make any sense, as the supposed scheme offered no economic advantage to SiFi Networks Fullerton.

13.    There is no reasonable dispute that Corbel fell far short of its commitments and failed to perform as required under the agreements with SiFi Networks Fullerton.  As a direct result of these failures, SiFi Networks Fullerton was damaged in an amount in excess of $17 million, *which continues to accrue.*

14.    Once Berkshire Hathaway's obligations were triggered, its options under Section 5 of the performance bond were to: (1) arrange for Corbel to complete the work (with SiFi Networks Fullerton's consent); (2) complete the work itself; (3) work with SiFi Networks Fullerton to obtain a replacement contractor; or, alternatively, waive those rights and either (4) pay SiFi Networks Fullerton any amounts for which Berkshire Hathaway is liable or (5) deny liability in whole or in part, "citing the reasons for denial." *Id.* § 5.

15.    Despite Berkshire Hathaway's unambiguous obligations as a surety under the performance bond after being notified by SiFi Networks Fullerton of the Contractor Default, Berkshire Hathaway refused to comply with its obligations under the performance bond.

16.    Further, SiFi Networks Fullerton was served and forced to defend a complaint naming it as a defendant by one of Corbel's equipment suppliers, Trinity

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 8:23-cv-1417

Equipment, Inc. ("Trinity"), in March of 2023. Trinity sought to foreclose on its mechanic's lien to recover claimed equipment Trinity supplied to Corbel.

17. Section 3 of the payment bond agreement obligated Berkshire Hathaway to tender a defense after the bond owner (SiFi Networks Fullerton) notified the contractor and surety of claims against the owner by "any person or entity seeking payment for labor, materials, or equipment furnished for use in the performance of the Construction Contract." **Ex. 2**, Payment Bond, § 3. SiFi Networks Fullerton fulfilled its obligation by notifying Corbel and Berkshire Hathaway of Trinity's claim. Berkshire Hathaway failed to tender a defense as required under the payment bond's terms.

18. Therefore, SiFi Networks Fullerton seeks monetary and declaratory relief from the Court arising out of Berkshire Hathaway's obligations under the performance bond to pay SiFi Networks Fullerton for any losses it incurs as a result of damages suffered in excess of the contract price balance owing to Corbel at the time of the default and termination. SiFi Networks Fullerton seeks further monetary and declaratory relief from the Court arising out of Berkshire Hathaway's obligations under the payment bond to tender a defense and, if applicable, indemnity for claims against SiFi Networks Fullerton under the contract. Additionally, SiFi Networks Fullerton is entitled to damages for Berkshire Hathaway's breaches of the implied covenant of good faith and fair dealing, as set forth in this Complaint.

## PARTIES

19. Plaintiff SiFi Networks Fullerton, LLC is a Delaware limited liability company with its principal place of business in Fullerton, California. Its principal place of business is located at 680 Langsdorf Drive, Fullerton, California 92831.

20. Defendant Berkshire Hathaway Specialty Insurance Company is a Nebraska corporation. Upon information and belief, its principal place of business is in Omaha, Nebraska, at the address of 1314 Douglas Street, Suite 1400, Omaha, Nebraska 68102. It can be served through its registered agent CSC-Lawyers

Incorporating Service Company, located at 233 South 13th Street, Suite 1900, Lincoln, Nebraska 68508.

## JURISDICTION AND VENUE

21.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between SiFi Networks Fullerton and Berkshire Hathaway.  Further, SiFi Networks Fullerton to date has suffered substantial losses in an amount far greater than $75,000, and those losses are increasing daily.

22.    This Court has personal jurisdiction over Berkshire Hathaway, as it has purposefully availed itself of the privilege of doing business in California related to the contracts at issue in this lawsuit.  Berkshire Hathaway's substantial contacts with California through its business in the state, involvement in the claims at issue in the City of Fullerton, and consent to suit in this forum make it such that Berkshire Hathaway could reasonably anticipate being hailed into this Court.

23.    In fact, personal jurisdiction is appropriate over Berkshire Hathaway pursuant to both the performance and payment bonds.  Under the performance bond, the parties agreed that "[a]ny proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located…." **Ex. 1**, Performance Bond, § 11.  Under the payment bond, the parties agreed that "[n]o suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the state in which the project that is the subject of the Construction Contract is located…." **Ex. 2**, Payment Bond, § 12.  Both bonds describe the Project as the "[f]inal design, engineering, and construction of fiber to the home ("FTTH") deployment in the City of Fullerton, CA…." **Ex. 1**, Performance Bond at 1; **Ex. 2**, Payment Bond at 5.

24.    Therefore, the parties agreed that any dispute over the bond agreements shall occur in a court of competent jurisdiction in the state in which the Project is located.  Venue is appropriate in this judicial district and division pursuant

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 8:23-cv-1417

to 28 U.S.C. § 1391(b)(2).  A substantial part of the events or actions that give rise to these claims occurred within this judicial district and division.  As the Project is located in Fullerton, California, this Court is the appropriate forum and venue, as consented to by Berkshire Hathaway.

## FACTUAL BACKGROUND

**A.    SiFi Networks Fullerton Contracts with Corbel for Services.**

25.    SiFi Networks Fullerton's business is to fund, build, and operate an open access fiber network in Fullerton, California.  There was a development agreement executed with the City of Fullerton in 2014.  The city has no control, ownership or investment in any aspect of the network or its operation. The infrastructure from the backhaul, to the mainline, to the residential gateway at the premise is 100% privately financed, operated and maintained by SiFi Networks Fullerton and assisted by its project contractors.

26.    One of those contractors was Corbel.  Corbel represented that it was one of a handful of companies that specialize in the practice of microtrenching for the installation of fiber networks.  Prior to the Fullerton Project, Corbel represented that it had a solid reputation in a highly specialized field, such that SiFi Networks Fullerton reasonably relied on such representations and believed that Corbel was the right contractor for the Project.

27.    In 2018, a Framework Master Agreement ("FMA") was executed, under which Corbel would provide engineering, procurement, and construction services pursuant to individually executed work orders for project companies in their respective municipal projects.

28.    The FMA was incorporated into the Work Order for the Fullerton FTTH Project executed between Corbel and SiFi Networks Fullerton on March 6, 2019.  Under the Work Order, Corbel was obligated to provide professional engineering, consulting, and development services for this Project, as well as procurement

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 8:23-cv-1417

services, permit obligations, supervision, materials, equipment, machinery, tools, labor, supplies and all other services required to complete the Project in full.

29.     Critically, it was **solely** Corbel's responsibility to obtain and pay for any necessary permits required for the Project.

30.     The permitting and scope of work for the Fullerton Project was divided into 20 Work Zones.  To achieve substantial completion of the work, Corbel was, among other things, to complete the design, permitting and installation for all 20 Work Zones.

31.     Corbel was also obligated to achieve completion of the final design, which required performing design services to SiFi Networks Fullerton's satisfaction, providing SiFi Networks Fullerton with an affidavit confirming that engineers/consultants had been paid in full, and providing final lien waivers.  Corbel was additionally obligated to achieve completion of the final site, which required fully and properly performing all work to SiFi Networks Fullerton's satisfaction, training SiFi Networks Fullerton's personnel in the operation of the Project, furnishing contractually specified documents, submitting a final accounting for the work, and providing authorizations, consents and approvals required by the City of Fullerton, among other requirements.

32.     Corbel was required to achieve substantial completion of work no later than April 11, 2021, and to achieve completion of the final site no later than July 11, 2021.  Completion of the final site required approval from Arcadis, SiFi Networks Fullerton's designated owner representative, and the City of Fullerton.

33.     Corbel was required to advise SiFi Networks Fullerton immediately of any problems that may cause a delay or cost issue as to completion of the Project.

34.     Corbel was to complete its scope of work for a fixed lump-sum price of $30,255,961.08, as the sole compensation for its work.  Only SiFi Networks Fullerton could direct a change in the scope of the work performed by Corbel.

35.    Corbel was further required to submit a request for a change order if needed, and was also required to take reasonable steps to mitigate the impact of any such action, including delay, that may lead to a change event, with the goal of resuming execution of the Project as soon as possible.

36.    Corbel represented, warranted and guaranteed to SiFi Networks Fullerton that, among other specific agreements in the contract, its work would be performed free from defects, in a good and workmanlike manner, and in compliance with the Work Order and other contract documents.

37.    Given Corbel's represented reputation in the industry and its performance in prior projects for others, SiFi Networks Fullerton had no reason to doubt these warranties.  Corbel also agreed that it would remediate defective work at its sole cost.

**B.    Corbel Secures Bonds From Berkshire Hathaway.**

38.    As required by the Work Order, Corbel secured both a payment bond and a performance bond from Berkshire Hathaway.

39.    The performance bond and payment bond both use AIA Document A312-2010, and cover the full amount of the $30,255,961.08 lump-sum payment.

40.    Berkshire Hathaway's obligations pursuant to the performance bond arise in the event that SiFi Networks Fullerton: (1) notifies Berkshire Hathaway and Corbel that it is considering declaring a Contractor Default; (2) declares a Contractor Default and terminates the contract, with notice to Berkshire Hathaway; and (3) agrees to pay the balance of the contract price to Berkshire Hathaway or a replacement contractor.  **Ex. 1**, Performance Bond, § 3.

41.    The performance bond further provides that late or improper notice to Berkshire Hathaway "shall not constitute a failure to comply with a condition precedent to [Berkshire Hathaway]'s obligations, or release [Berkshire Hathaway] from its obligations, except to the extent [Berkshire Hathaway] demonstrates actual prejudice." *Id.* § 4.

42. Further, Berkshire Hathaway waives "notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations." *Id.* § 10.

**C.    Corbel Fails to Perform.**

43. Corbel ultimately failed to perform on the Fullerton Project, and was deficient in nearly all respects of nonperformance, from failures to obtain permits, to poor productivity, to repeated safety problems.

44. In the roughly thirty-three months Corbel spent on the Project between the issuance of the Notice to Proceed in April 2019 and its termination in February 2022, Corbel obtained approval of its design and building permits to proceed with construction in only seven of the 20 designated Work Zones, with the last approval in January 2021.

45. Corbel failed to achieve either "Work Substantial Completion" or "Final Site Completion" by the required deadlines of April 11, 2021, and July 11, 2021, respectively. By means of example of one of these failures only, at the time of Corbel's termination, it had completed 16% of the serviceable addresses within the City of Fullerton required to be accessed by Developer's FTTH system under the Work Order Contract Documents. This equated to 9,029 addresses of the required 55,146 total serviceable addresses.

46. Corbel completed its microtrenching work in only two of the seven Work Zones in which it obtained permits to proceed with construction, but even in those Zones Corbel failed to obtain close out approval/certification from the City of Fullerton.

47. Even where Corbel minimally performed its scope, it repeatedly delivered defective, noncompliant and substandard work, contrary to its obligations under the contract. During the 2021 calendar year alone, SiFi Networks Fullerton, through its representative, Arcadis, notified Corbel of 716 instances of defective work and other performance deficiencies under the scope of work.

48.    Of those 716 instances, nearly half (352) involved significant defective work issues that took Corbel an average of 25 days to resolve.  Further, while Corbel worked with SiFi Networks Fullerton over the course of 2021 to try to remedy many of these issues, 87 remained entirely unresolved at the time Corbel was terminated. Corbel's failure to timely perform corrections of defective work as required is another breach of its agreements with SiFi Networks Fullerton.

49.    As a result, most of Corbel's onsite operations after June 2021 were focused on remediating defective and non-compliant work issues rather than laying new trenches.  By June 2021, as a result of these deficiencies, SiFi Networks Fullerton had not been able to add any serviceable addresses to the network since October 2020.

50.    Corbel's deficient performance also led to repeated safety incidents caused by its personnel, primarily during its microtrenching operations.  Corbel's construction operations in 2021 caused, in whole or in part, 38 separate incidents of striking and damaging telecom/TV fiber lines, electrical lines, gas lines, water lines, traffic signal lines, and other equipment.  These incidents necessitated appropriate stop work orders and corrective work notices to Corbel to repair the damaged property.

51.    In fact, Corbel voluntarily underwent training in May 2021 to retrain its personnel—and SiFi Networks Fullerton relied on Corbel's representation that the training would result in improved safety performance.  Yet, Corbel had seven more striking incidents in June, July, and August after restarting operations.

52.    Corbel additionally failed, among other things, to (1) timely pay its subcontractors, material and/or equipment suppliers, and vendors for work, labor and/or materials furnished to or incorporated in the Fullerton Project; (2) provide that each such item of the work and thereby the Fullerton Project be free and clear of all liens, claims, security interests, or encumbrances; (3) defend, indemnify and hold SiFi Networks Fullerton harmless regarding such claims or liens for unpaid work,

labor and/or materials by such subcontractors, material and/or equipment suppliers and vendors of any tier, as required by the Work Order; and (4) properly obtain and maintain all required licenses and permits.

53.    Each of these breaches of the agreements between Corbel and SiFi Networks Fullerton are material, and amount to a Contractor Default under the terms of the governing Work Order.

**D.    SiFi Networks Fullerton Terminates Corbel for Default.**

54.    SiFi Networks Fullerton continuously worked with Corbel to avoid a costly default and termination.  SiFi Networks Fullerton, including through its representative, Arcadis, consistently pushed Corbel to develop better quality control plans and improve its performance.  As a result, Corbel committed to improving its work on numerous occasions and in numerous ways, including as noted above on additional safety training, increasing productivity with additional crews, and performing its obligations.

55.    SiFi Networks Fullerton even listened to Corbel's proposals on additional financing and partners so Corbel could complete its work.  These discussions were initiated by Corbel's CEO, included representations that Berkshire Hathaway was involved in the process, did not release or excuse Corbel from performance, and ultimately did not go through or alter Corbel's performance obligations.  SiFi Networks Fullerton understood these discussions to be a collaborative process including Berkshire Hathaway within the framework of the existing agreements.

56.    However, despite all of the representations and promises for improvement by Corbel, through taking on a partner or otherwise, Corbel's deficient performance continued.

57.    SiFi Networks Fullerton, through Arcadis, sent Corbel another letter dated November 10, 2021, that detailed outstanding issues requiring corrective action by Corbel, many of which had been pending for months.  After receiving no response

from Corbel, and in light of Corbel's continued failure to improve its performance, SiFi Networks Fullerton had no choice but to consider declaring a Contractor Default and terminating Corbel to protect its rights.

58.    Accordingly, consistent with the performance bond, SiFi Networks Fullerton sent notice to Corbel and Berkshire Hathaway on December 28, 2021 that it was considering declaring a Contractor Default.

59.    In response, Berkshire Hathaway requested a conference to discuss Corbel's performance, which took place virtually on January 7, 2022.  Neither during nor after that conference did Berkshire Hathaway or Corbel propose for Corbel to complete the work as promised.

60.    On February 15, 2022, SiFi Networks Fullerton sent another letter to Corbel regarding outstanding work.  This letter too went unanswered.

61.    SiFi Networks Fullerton declared a Contractor Default and terminated Corbel on February 24, 2022, with notice to Berkshire Hathaway provided simultaneously, pursuant to Section 3.2 of the performance bond.

**E.    Berkshire Hathaway Breaches Its Obligations.**

62.    Once Berkshire Hathaway's obligations under the bond were triggered by SiFi Networks Fullerton declaring a Contractor Default, its options were to: (1) arrange for Corbel to complete the work (with SiFi Networks Fullerton's consent); (2) complete the work itself; (3) work with SiFi Networks Fullerton to obtain a replacement contractor; or, alternatively, waive those rights and either (4) pay SiFi Networks Fullerton any amounts for which Berkshire Hathaway is liable or (5) deny liability in whole or in part, "citing the reasons for denial." *Id.* § 5.

63.    Berkshire Hathaway instead chose to breach its obligations and its duties of good faith and fair dealing.

64.    Despite its initial obligation under the performance bond to proceed "promptly" following notice of Corbel's default and termination, Berkshire Hathaway investigated SiFi Networks Fullerton's claim for seven months.  *Id.*

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 8:23-cv-1417

65.     During that time, Berkshire Hathaway retained Rodney Tompkins of RJT Construction, Inc. as a consultant and to assist in its investigation.   And, Berkshire Hathaway remained actively involved in the process of replacing Corbel with new contractors to complete Corbel's unfinished scope of work.   On July 29, 2022, Berkshire Hathaway consented to SiFi Networks Fullerton engaging Pramira, Inc. and Lat Long Infrastructures LLC ("Lat Long") to finish Corbel's work.

66.     Despite Berkshire Hathaway's deep understanding of the nature of Corbel's failures, its own responsibilities under the bond, and the need for replacement contractors to complete the work, Berkshire Hathaway denied liability in a letter dated September 26, 2022.

67.     Berkshire Hathaway's denial letter offered no defense to the charge that Corbel failed to perform its obligations under the contract despite its months-long investigation of Corbel's performance.

68.     Instead, the denial letter parroted allegations of wrongdoing by Lat Long and others that appear to have come from Corbel's principal.   Berkshire Hathaway failed to point to any alleged conduct by SiFi Networks Fullerton in making these unsubstantiated allegations that also make no economic sense.   These actions by Berkshire Hathaway, among others, are a separate and independent breach of its duties owed to SiFi Networks Fullerton.

69.     Berkshire Hathaway is bound by clear and express obligations under the performance bond to pay SiFi Networks Fullerton for any losses it incurs as a result of damages suffered in excess of the contract price balance owing to Corbel at the time of the default and termination, including, among other things, legal, delay, and disruption damages caused by Corbel's default and Berkshire Hathaway's wrongful denial of liability under the bond.   The damages include, but are not limited to, all allowable direct, incidental, and other damages (which may include special, consequential, or indirect damages), as determined by the trier of fact.

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 8:23-cv-1417

70.    Berkshire Hathaway failed to fulfill *any* of its obligations under these bond agreements, and has done so in breach of its duties of good faith and fair dealing.  SiFi Networks Fullerton's damages as a result of these failures continue to increase and are a direct result of Berkshire Hathaway's misconduct and breaches.

**F.    Berkshire Hathaway Fails To Tender a Defense.**

71.    On March 2, 2023, SiFi Networks Fullerton was served and forced to defend a complaint naming it as a defendant by one of Corbel's equipment suppliers, Trinity.  Trinity sought to foreclose on its mechanic's lien to recover claimed equipment Trinity supplied to Corbel.

72.    Section 3 of the payment bond requires SiFi Networks Fullerton to provide prompt notice to Corbel and Berkshire Hathaway of claims, demands, liens or suits against SiFi Networks Fullerton by any person or entity seeking payment for "labor, materials, or equipment furnished for use in the performance of the Construction Contract…."  **Ex. 2**, Payment Bond, § 3.

73.    SiFi Networks Fullerton complied in full with this notice requirement, providing appropriate notice to Corbel and Berkshire Hathaway of Trinity's claim by letter on March 24, 2023.

74.    Once Berkshire Hathaway's obligations under the bond were triggered by SiFi Networks Fullerton notifying the surety of the claim, Berkshire Hathaway was required to tender a defense of this claim to SiFi Networks Fullerton.  *Id.*

75.    Berkshire Hathaway did no such thing.  On April 3, 2023, Berkshire Hathaway notified SiFi Networks Fullerton of its failure to tender a defense, despite an unambiguous obligation under the payment bond to do so.

76.    Berkshire Hathaway, under the payment bond, is liable to SiFi Networks Fullerton for any damages incurred in litigating the claim by Trinity, including in defense and, if applicable, indemnity.  This includes, but is not limited to, all allowable direct, incidental, and other damages (which may include special, consequential, or indirect damages), as determined by the trier of fact.

77.    The damages for both the payment bond and performance bond breaches include "additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Section 5" of the performance bond, "reasonable attorney's fees the Claimant incurs" under Section 7.3 of the payment bond, and costs owed to SiFi Networks Fullerton pursuant to Federal Rule of Civil Procedure 54(d).  **Ex. 1**, Performance Bond § 7.2; **Ex. 2**, Payment Bond § 7.3.

78.    Pursuant to Section 7.3 of the performance bond, as well as Section 11 of the Work Order, liquidated damages are also owed to SiFi Networks Fullerton by Berkshire Hathaway.

## CLAIMS FOR RELIEF

## COUNT I

## DECLARATORY RELIEF

79.    SiFi Networks Fullerton repeats, realleges, and incorporates by reference the above allegations as if fully set forth herein.

80.    Section 5 of the performance bond expressly and unambiguously provides that that upon notice of a Contractor Default by SiFi Networks Fullerton, Berkshire Hathaway must (1) arrange for Corbel to complete the work (with SiFi Networks Fullerton's consent); (2) complete the work itself; (3) work with SiFi Networks Fullerton to obtain a replacement contractor; or, alternatively, waive those rights and either (4) pay SiFi Networks Fullerton any amounts for which Berkshire Hathaway is liable or (5) deny liability in whole or in part, "citing the reasons for denial." **Ex. 1**, Performance Bond, § 5.

81.    SiFi Networks Fullerton declared a Contractor Default on February 24, 2022, appropriately notifying Berkshire Hathaway the same day of Corbel's termination.

82.    Berkshire Hathaway denied liability under the performance bond despite SiFi Networks Fullerton's satisfaction of its obligations, and has failed to pay

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 8:23-cv-1417

SiFi Networks Fullerton for any losses it incurs as a result of damages suffered in excess of the contract price balance owing to Corbel at the time of the default and termination, pursuant to Section 5 of the performance bond.

83.    Section 3 of the payment bond expressly and unambiguously provides that Berkshire Hathaway agreed to tender a defense upon notice from SiFi Networks Fullerton of a claim against SiFi Networks Fullerton by "any person or entity seeking payment for labor, materials, or equipment furnished for use in the performance of the Construction Contract." **Ex. 2**, Payment Bond, § 3.

84.    SiFi Networks Fullerton notified both Corbel and Berkshire Hathaway of Trinity's claim on March 24, 2023, as required pursuant to Section 3.

85.    Berkshire Hathaway refused to tender a defense to SiFi Networks Fullerton for Trinity's claim despite SiFi Networks Fullerton's satisfaction of its obligations under the payment bond.

86.    Berkshire Hathaway's actions have harmed SiFi Networks Fullerton by causing SiFi Networks Fullerton to incur damages associated both with the failure of Berkshire Hathaway to assume liability for Corbel's default and termination under the performance bond, and the failure of Berkshire Hathaway to tender a defense of Trinity's claim to SiFi Networks Fullerton under the payment bond.

87.    Accordingly, SiFi Networks Fullerton seeks a declaration that Berkshire Hathaway is obligated to pay SiFi Networks Fullerton for its losses incurred as a result of damages suffered in excess of the contract price balance owing to Corbel at the time of the default and termination, and further, that Berkshire Hathaway must tender a defense and, if applicable, indemnity of Trinity's claim to SiFi Networks Fullerton.

## <u>COUNT II</u>

### **BREACH OF CONTRACT – PERFORMANCE BOND**

88.    SiFi Networks Fullerton repeats, realleges, and incorporates by reference the above allegations as if fully set forth herein.

89.    The performance bond is a valid and enforceable contract between SiFi Networks Fullerton and Berkshire Hathaway.

90.    Under the performance bond, Berkshire Hathaway expressly agreed that upon notice of a Contractor Default by SiFi Networks Fullerton, it would (1) arrange for Corbel to complete the work (with SiFi Networks Fullerton's consent); (2) complete the work itself; (3) work with SiFi Networks Fullerton to obtain a replacement contractor; or, alternatively, waive those rights and either (4) pay SiFi Networks Fullerton any amounts for which Berkshire Hathaway is liable or (5) deny liability in whole or in part, "citing the reasons for denial." **Ex. 1**, Performance Bond, § 5.

91.    SiFi Networks Fullerton has fully complied with its obligations under the bond.  SiFi Networks Fullerton notified both Corbel and Berkshire Hathaway on December 28, 2021 that it was considering declaring a Contractor Default.  It attended the conference requested by Berkshire Hathaway as required under the bond.

92.    SiFi Networks Fullerton then declared a Contractor Default on February 24, 2022, appropriately notifying Berkshire Hathaway the same day of Corbel's termination.

93.    SiFi Networks Fullerton agreed to pay the balance of the contract price to replacement contractors, and Berkshire Hathaway expressly consented to the hiring of other contractors to finish Corbel's scope of work.  All conditions precedent under the performance bond have been met by SiFi Networks Fullerton.

94.    Despite the unambiguous terms of the performance bond and SiFi Networks Fullerton's compliance with its obligations as the owner of the bond, Berkshire Hathaway denied liability under the bond in full.  Berkshire Hathaway likewise failed to adequately investigate SiFi Networks Fullerton's claim under the performance bond before denying liability.

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 8:23-cv-1417

95.     This denial of liability was a breach of Berkshire Hathaway's obligations under the performance bond.

96.     Once Berkshire Hathaway denied liability under the performance bond after SiFi Networks Fullerton provided appropriate notice of a Contractor Default, SiFi Networks Fullerton is entitled to enforce any remedy available to it "without further notice." *Id.* § 6.

97.     Berkshire Hathaway's breach of its obligations caused and will continue to cause substantial damages to SiFi Networks Fullerton, and have materially and adversely affected SiFi Networks Fullerton's ability to complete the Fullerton Project.

98.     SiFi Networks Fullerton seeks all damages incurred, expected to be incurred, or recoverable under applicable law in connection with Berkshire Hathaway's breach of its obligations under the performance bond.  This includes, but is not limited to, all allowable direct, incidental, and other damages (which may include special, consequential, or indirect damages), as determined by the trier of fact.

99.     These damages include "additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Section 5" of the performance bond, as well as costs owed to SiFi Networks Fullerton pursuant to Federal Rule of Civil Procedure 54(d).  **Ex. 1**, Performance Bond § 7.2.

100.     Pursuant to Section 7.3 of the performance bond, as well as Section 11 of the Work Order, liquidated damages are also owed to SiFi Networks Fullerton by Berkshire Hathaway.

101.     Further, SiFi Networks Fullerton has been required to retain the services of counsel to prosecute this action.  SiFi Networks Fullerton is entitled to recover its reasonable attorneys' fees under the applicable agreements, rules, and statutes.

# COUNT III

## BREACH OF CONTRACT – PAYMENT BOND

102.   SiFi Networks Fullerton repeats, realleges, and incorporates by reference the above allegations as if fully set forth herein

103.   The payment bond is a valid and enforceable contract between SiFi Networks Fullerton and Berkshire Hathaway.

104.   Under the payment bond, Berkshire Hathaway expressly agreed to tender a defense upon notice from SiFi Networks Fullerton of a claim against SiFi Networks Fullerton by "any person or entity seeking payment for labor, materials, or equipment furnished for use in the performance of the Construction Contract." **Ex. 2**, Payment Bond, § 3.

105.   Once Berkshire Hathaway's obligations under the bond were triggered by SiFi Networks Fullerton notifying the surety of the claim by Trinity for equipment against SiFi Networks Fullerton, Berkshire Hathaway was required to tender a defense of this claim to SiFi Networks Fullerton.

106.   SiFi Networks Fullerton fully complied with its obligations under the payment bond.   SiFi Networks Fullerton notified both Corbel and Berkshire Hathaway of Trinity's claim on March 24, 2023, as required pursuant to Section 3. All conditions precedent under the payment bond are met by SiFi Networks Fullerton.

107.   Despite the unambiguous terms of the payment bond and SiFi Networks Fullerton's compliance with its obligations as the owner of the bond, on April 3, 2023, Berkshire Hathaway refused to tender a defense to SiFi Networks Fullerton under the bond.   Berkshire Hathaway likewise failed to adequately investigate Trinity's equipment claim against SiFi Networks Fullerton before refusing to tender a defense.

108.   Failure to tender a defense was in breach of Berkshire Hathaway's obligations under the payment bond.

109.   This breach has caused and will continue to cause substantial additional damages to SiFi Networks Fullerton.

110.   SiFi Networks Fullerton seeks all damages incurred, expected to be incurred, or recoverable under applicable law in connection with Berkshire Hathaway's breach of its obligations under the payment bond including in defense and, if applicable, indemnity.  This includes, but is not limited to, all allowable direct, incidental, and other damages (which may include special, consequential, or indirect damages), as determined by the trier of fact, as well as costs owed to SiFi Networks Fullerton pursuant to Federal Rule of Civil Procedure 54(d).

111.   Further, SiFi Networks Fullerton has been required to retain the services of counsel to prosecute this action.  SiFi Networks Fullerton is entitled to recover its reasonable attorneys' fees under the applicable agreements, rules, and statutes.

## COUNT IV

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

112.   SiFi Networks Fullerton repeats, realleges, and incorporates by reference the above allegations as if fully set forth herein.

113.   SiFi Networks Fullerton and Berkshire Hathaway entered into both performance and payment bond agreements, pursuant to obligations under the Project.

114.   SiFi Networks Fullerton fully complied with its obligations to Berkshire Hathaway under both the performance and payment bond agreements, meeting all conditions precedent.  SiFi Networks Fullerton gave proper notice and declared a Contractor Default when Corbel failed to perform.  It attended the conference as requested by Berkshire Hathaway under the bond, and cooperated in full with Berkshire Hathaway's seven-month investigation of SiFi Networks Fullerton's claim.

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 8:23-cv-1417

115.   Berkshire Hathaway was thus obligated to pay SiFi Networks Fullerton under the bond, as it committed to do if Corbel committed a Contractor Default, which occurred in numerous ways.

116.   During the prolonged investigation, Berkshire Hathaway further negotiated with SiFi Networks Fullerton and Corbel about hiring replacement contractors to finish work on the Fullerton Project.  SiFi Networks Fullerton believed it was working alongside Berkshire Hathaway to resolve Corbel's deficiencies and ensure completion of the Project.

117.   Berkshire Hathaway then denied liability of SiFi Networks Fullerton's claim under the performance bond, following months of supposed cooperation between the parties to find a solution to continue the Project.

118.   In denying liability after stringing SiFi Networks Fullerton along through a long purported investigation and seemingly productive negotiations regarding replacement contractors, Berkshire Hathaway acted unfairly and without regard for its duty of good faith and fair dealing.  Further, each of the breaches identified above likewise serve as separate and independent bases for breaches of Berkshire Hathaway's duty of good faith and fair dealing.

119.   Additionally, the failure to meet its obligations under the payment bond as set forth above is also a separate and independent breach of Berkshire Hathaway's duty of good faith and fair dealing.

120.   These breaches of the implied covenant of good faith and fair dealing under the contracts has caused and will continue to cause damages to SiFi Networks Fullerton.

121.   SiFi Networks Fullerton seeks all damages incurred, expected to be incurred, or recoverable under applicable law in connection with Berkshire Hathaway's breach of its obligations under the implied covenant of good faith and fair dealing.  This includes, but is not limited to, all allowable direct, incidental, and

other damages (which may include special, consequential, or indirect damages), as determined by the trier of fact.

122.   These damages include "additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Section 5" of the performance bond, "reasonable attorney's fees the Claimant incurs" under Section 7.3 of the payment bond, and costs owed to SiFi Networks Fullerton pursuant to Federal Rule of Civil Procedure 54(d).  **Ex. 1**, Performance Bond § 7.2; **Ex. 2**, Performance Bond § 7.3.

123.   Pursuant to Section 7.3 of the performance bond, as well as Section 11 of the Work Order, liquidated damages are also owed to SiFi Networks Fullerton by Berkshire Hathaway.

## CONDITIONS PRECEDENT

124.   All conditions precedent to SiFi Networks Fullerton's claims for relief have been performed or have occurred.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial as to all issues triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, SiFi Networks Fullerton prays that this Court enter judgment in its favor and against Berkshire Hathaway as follows:

1.     Declare that, pursuant to Section 5 of the performance bond, Berkshire Hathaway is obligated to pay SiFi Networks Fullerton for any losses it incurs as a result of damages suffered in excess of the contract price balance owing to Corbel at the time of the default and termination;

2.     Declare that, pursuant to Section 3 of the payment bond, Berkshire Hathaway must tender a defense and, if applicable, indemnity to SiFi Networks Fullerton of Trinity's claims against SiFi Networks Fullerton;

3.       Award damages to SiFi Networks Fullerton resulting from Berkshire Hathaway's breaches of its obligations under the performance and payment bonds;

4.       Award damages to SiFi Networks Fullerton resulting from Berkshire Hathaway's breaches of its duty of good faith and fair dealing;

5.       Award all damages and expenses in an amount to be determined by the trier of fact;

6.       Award reasonable attorneys' fees;

7.       Award costs of Court;

8.       Award pre-judgment and post-judgment interest as allowed by law; and

9.       Award recovery of such other relief to which Plaintiff is entitled.

Dated:  August 4, 2023

JONES DAY

By:  /s/ Matthew T. Billeci

Matthew T. Billeci

Matthew T. Billeci (SBN 329014)
mbilleci@jonesday.com
JONES DAY
3161 Michelson Drive
Suite 800
Irvine, California 92612.4408
Telephone:  +1.949.851.3939
Facsimile:  +1.949.553.7539

J. Laurens Wilkes (*pro hac* forthcoming)
jlwilkes@jonesday.com
JONES DAY
717 Texas Avenue
Suite 3300
Houston, Texas 77002.2712
Telephone:  +1.832.239.3939
Facsimile:  +1.832.239.3600

Dustin M. Koenig (*pro hac* forthcoming)
dkoenig@jonesday.com
JONES DAY
325 John H. McConnell Boulevard
Suite 600
Columbus, Ohio 43215.2792
Telephone:  +1.614.469.3939
Facsimile:  +1.614.461.4198

Attorneys for Plaintiff
SIFI NETWORKS FULLERTON, LLC

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 8:23-cv-1417